UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHO RESTAURANT INC. ) <br> d/b/a SAKURA RESTAURANT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HARLEYSVILLE PREFERRED ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant. | Case No. 16-cv-476 <br><br> Judge John W. Darrah |

## **MEMORANDUM OPINION AND ORDER**

On January 14, 2016, Plaintiff Sho Restaurant, Inc. filed a Complaint against Defendant Harleysville Preferred Insurance Company, alleging breach of contract and violations of 215 ILCS 5/155 for unreasonable and vexatious behavior. Defendant subsequently filed a counterclaim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 13. Both parties filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Plaintiff's Motion [42] and Defendant's Motion [40] are both granted.

## **BACKGROUND**

Plaintiff is an Illinois corporation with its principal place of business in Cook County, Illinois. (Dkt. 38 ¶ 4.) Defendant is a Pennsylvania corporation that is authorized to do business in Illinois. (Id. ¶ 3.) In January 2011, Plaintiff purchased Sakura Restaurant, which operated in a commercial building located at 105 Main Street in Mount Prospect, Illinois ("105 Main"). (Dkt. 23 ¶ 6.) Plaintiff leased the building from the Nakamishi Family Trust. (Id. ¶ 9.) Plaintiff purchased Sakura Restaurant for $320,000.00. This purchase price included the transfer of

equipment, a cash register, telephone, credit card processing machine, furniture, fixtures, supplies, utensils, business license, liquor license, good will and the business name. (Id. ¶¶ 8,9.) Defendant issued a policy of insurance to Plaintiff with a term of March 17, 2013 to March 17, 2014 (the "Policy"). (Dkt. 38 ¶ 9.) In December of 2013, Plaintiff renovated Sakura Restaurant at a cost of $76,943. (Dkt. 23 ¶ 11.) Plaintiff also made $20,108 in repairs to 105 Main. (Id. ¶ 12.)

On February 9, 2014, a fire occurred at 105 Main, damaging both the building and Sakura Restaurant. (Id. ¶ 21.) Plaintiff filed a property loss claim under the Policy for damage arising from the fire.[1] (Id. ¶ 23.) Defendant acknowledged Plaintiff's claim in a letter dated February 11, 2014. On February 20, 2014, Defendant advised Plaintiff that it would conduct an investigation of the fire loss subject to a reservation of rights to deny coverage under the terms of the Policy. (Id. ¶ 24.) On or about May 16, 2014, Plaintiff hired a public adjuster, Kevin Jones & Associates (the "Public Adjuster"), to assist in the adjustment and handling of its claim. (Dkt. 38 ¶ 11.) On or about July 10, 2015, the Public Adjuster submitted a "Business Personal Property Inventory" to Defendant. (Dkt. 38 ¶ 12.) Defendant retained CEIPS, LLC to conduct a valuation of Plaintiff's "Business Personal Property Inventory". (Id. ¶ 13.) CEIPS, LLC concluded that the actual cash value of Plaintiff's "Business Personal Property" loss was $115,136.13. (Id. ¶ 14.) Plaintiff later amended its "Business Personal Property Inventory" to include a list of consumable products allegedly damaged in the fire. CEIPS, LLC calculated that the actual cash value of the consumable products was $15,535.08. (Id. ¶¶ 16, 17.)

---

[1] The parties do not agree on the date Plaintiff submitted the property loss claim. Plaintiff alleges that the claim was submitted on February 9, 2014. Defendant alleges that the claim was submitted on February 11, 2014.

2

Plaintiff submitted additional claims for loss of its right to use the "Improvements and Betterments" at 105 Main and for "Business Income" loss. (Id. ¶¶ 19, 22.) Defendant and the Public Adjuster agreed that Plaintiff was entitled to a payment of $71,500.00 for the cost to construct the "Improvements and Betterments". The Public Adjuster calculated that the "Business Income" owed to Plaintiff was $291,606.00 based on a six-month "Period of Restoration". (Id. ¶¶ 20, 23-25.) Defendant retained an accountant, Michael Webster, to calculate Plaintiff's "Business Income" loss resulting from the fire. (Id. ¶ 26.) Webster calculated a "Business Income" loss of $20,802.00. (Id. ¶ 27.) Defendant then issued payments to Plaintiff as follows: $20,802.00 for "Business Income" loss; $131,671.21, less a $1,000.00 deductible, for loss of "Business Personal Property"; and $71,500.00 for loss of use interest in the "Improvements and Betterments" at 105 Main. (Id. ¶¶ 15, 16-18, 29.)

On June 14, 2016, Plaintiff filed its First Amended Complaint against Defendant alleging: (I) Breach of Contract; (II) Unreasonable and Vexatious Dispute about the Scope of Loss; and (III) Unreasonable and Vexatious Delay. (FAC.) On July 21, 2016, Defendant filed a counterclaim for declaratory judgment. (Dkt. 38.)

**LEGAL STANDARD**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting

each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

"In reviewing a motion to dismiss a counterclaim, the Court must assume the truth of the facts alleged in the counterclaim, construe allegations liberally, and view them in the light most favorable to the counterclaim plaintiff." *See Centers v. Centennial Mortg., Inc.,* 398 F.3d 930, 933 (7th Cir. 2005).

## ANALYSIS

*Defendant's Motion to Dismiss*

Defendant argues that Plaintiff failed to allege any facts to support its allegations that Defendant engaged in unreasonable and vexatious behavior while handling Plaintiff's claim. Section 155 provides that an award of attorney's fees and costs is appropriate if insurers' actions are "vexatious and unreasonable." 215 Ill. Comp. Stat. 5/155. Attorney's fees and costs may only be awarded where the evidence shows that the insurer's behavior was willful and without reasonable cause. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.,* 200 F.3d 1102, 1110 (7th Cir. 2000). The insurer's conduct is not vexatious and unreasonable if: "(1) there is a *bona fide* dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.*

4

Plaintiff alleges that Defendant unreasonably and vexatiously disputed the scope of its loss by failing to pay the limits of the Policy and failing to properly adjust or evaluate its claim. Plaintiff does not plead any facts to support its allegations. The Complaint provides no details as how Defendant allegedly failed to investigate Plaintiff's claim. Plaintiff alleges that Defendant failed to pay the limits of the Policy, but makes no allegations as to how this failure was willful and without reasonable cause. While it is possible that Defendant did engage in behavior giving rise to Section 155 liability, Plaintiff's allegations present this case as merely a *bona fide* dispute concerning the scope and application of the Policy.

The Complaint is similarly lacking in facts to support Plaintiff's allegations of unreasonable and vexatious delay. Plaintiff contends in its Response that Defendant paid the Policy after an almost two year delay and that the delay caused more damage and increased Plaintiff's losses above the Policy limits. However, the Complaint contains no factual allegations to support Plaintiff's contention. The Complaint provides no details regarding the date on which Plaintiff received any payments from Defendant, nor does it provide any details on how this delay caused further injury. Plaintiff alleges that Defendant "needlessly delayed and withheld payment of the full policy benefits in a reasonable time in violation of 215 ILCS 5/155" and as evidence of this delay, again lists the ways in which Defendant failed to pay the limits of the Policy. (Dkt. 23 ¶ 37.) Plaintiff does not allege any facts that would raise its right to relief above the speculative level. Therefore, Defendant's Motion to Dismiss Counts II and III of the Complaint is granted.

*Plaintiff's Motion to Dismiss*

Defendant seeks a declaration that: (1) Defendant owes no duty to Plaintiff to pay for direct physical loss of or damage to 105 Main; (2) Defendant owes no duty to Plaintiff to pay

5

replacement costs for lost or damaged property and owes no additional coverage for "Business Personal Property" damage; and (3) Defendant properly calculated and paid Plaintiff's "Business Income" loss. Plaintiff argues that Defendant's counterclaim for declaratory judgment should be dismissed as redundant because it "restates the issues already before the court" through Plaintiff's breach of contract claim.[2] Defendant argues that its counterclaim is different from Plaintiff's claim because it involves interpretation of different language and sections of the Policy. This argument is unpersuasive. The basis for the dispute between the parties is whether or not Defendant fulfilled its duty to Plaintiff under the Policy. Plaintiff claims that Defendant failed to do so in a number of ways, including failing to make payment of the full policy benefits, and as such, is in breach of the Policy. To determine whether Defendant is in breach of the contract, the Policy must be interpreted as a whole, not just the isolated provisions cited in Plaintiff's Complaint.

Defendant also argues that there is a significant difference between the parties' claims for relief because Plaintiff's Complaint fails to include facts material to the dispute. The existence of additional factual allegations in Defendant's counterclaim may not be sufficient to distinguish it from Plaintiff's claim. Defendant also argues that its counterclaim is not redundant because it seeks additional relief outside of Plaintiff's breach of contract claim. Defendant seeks a declaration from the Court that it accurately and completely fulfilled its obligations to Plaintiff under the Policy. Although Plaintiff alleges that Defendant breached the Policy in ways in addition to its alleged failure to appropriately pay out the coverage limits, specification of these

---

[2] Defendant argues that Plaintiff improperly moves to dismiss Defendant's counterclaim under Rule 12(b)(6); however, courts in this District have dismissed counterclaims under this Rule. *See e.g., Intercon Solutions, Inc. v. Basel Action Network*, 969 F.Supp.2d 1026, 1067 (N.D. Ill. 2013); *LaSalle Bank Nat'l Assoc. v. Paramont Properties et al.*, 588 F.Supp.2d 840, 862 (N.D. Ill. 2008).

alleged breaches of duty will clarify the nature and extent of coverage available to Plaintiff under the Policy and also assist in a determination as to whether Defendant fulfilled its obligations to Plaintiff. As Defendant's counterclaim is redundant to Plaintiff's Complaint, Plaintiff's Motion to Dismiss is granted.[3]

## CONCLUSION

Plaintiff's Motion to Dismiss [42] is granted. Defendant's counterclaim is dismissed with prejudice. Defendant's Motion to Dismiss [40] is granted. Counts II and III of Plaintiff's Complaint are dismissed without prejudice. Plaintiff is granted leave to amend, if it can do so pursuant to Rule 11, within thirty days of this Order.

Date:   January 24, 2017

JOHN W. DARRAH
United States District Court Judge

---

[3] Defendant cites to several cases to support its contention that Plaintiff must demonstrate that it will suffer prejudice because of the counterclaim. None of these cases stand for this proposition. In each of the cited cases, the Court declined to dismiss the counterclaim and noted that allowing it to remain pending would not prejudice the other party, not that it was necessary to demonstrate prejudice to prevail on a motion to dismiss. *See Essex Ins. Co. v. Vill. of Oak Lawn,* No. 14-CV-04572, 2015 WL 1942937, at *6 (N.D. Ill. Apr. 28, 2015); *see also VW Credit, Inc. v. Friedman & Wexler, LLC,* No. 09 C 2832, 2010 WL 2330364, at *2 (N.D. Ill. June 7, 2010); *see also Balmoral Racing Club, Inc. v. Churchill Downs, Inc.,* No. 11 C 1028, 2011 WL 6009610, at *2 (N.D. Ill. Nov. 29, 2011).